EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |
|---|---|
| Mayra Lissette Pellot Arce<br><br>Peticionaria<br><br>v.<br><br>Infosys BPM Limited Corp.;<br>Aseguradora A, B, C<br><br>Recurridos | Certiorari<br><br>2023 TSPR 41<br><br>211 DPR ___ |

Número del Caso: CC-2022-0694

Fecha: 4 de abril de 2023

Tribunal de Apelaciones:

    Panel Especial

Abogado de la parte peticionaria:

    Lcdo. Luis A. Zayas Monge

Abogados de la parte recurrida:

    Lcda. Elizabeth Pérez-Lleras
    Lcdo. Daniel Limés Rodríguez

Materia: Resolución de Sala de Despacho con Voto Particular Disidente.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Mayra Lissette Pellot Arce

Peticionaria

v.                          CC-2022-0694

Infosys BPM Limited Corp.;
Aseguradora A, B, C

Recurridos

Sala de Despacho integrada por la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Rivera García y el Juez Asociado señor Estrella Martínez

RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de abril de 2023.

Examinada la primera *Reconsideración al amparo de la Regla 45 del Tribunal Supremo de Puerto Rico,* no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez reconsideraría y emitió un Voto particular disidente.


                    Javier O. Sepúlveda Rodríguez
                    Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Mayra Lissette Pellot Arce<br><br>Peticionaria<br><br>v.<br><br>Infosys BPM Limited Corp.;<br>Aseguradora A, B, C<br><br>Recurridos | CC-2022-0694 | Certiorari |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 4 de abril de 2023.

De entrada, debo aclarar de qué no trata esta controversia: este caso no se trata de una empleada a quien se le denegó ser contratada por ser una adicta que abusa ilegalmente de una droga o sustancia controlada. **En cambio, de lo que trata este caso es de un patrono que se negó a contratar a una empleada por razón de que esta, en virtud de la Ley para manejar el estado, desarrollo e investigación del cannabis para la innovación, normas aplicables y límites, infra, utiliza cannabis medicinal como parte de su tratamiento para combatir el dolor provocado por el cáncer de mama.**

Esta controversia requería que dilucidáramos la validez de una cláusula contractual que sujeta cierta oferta de

empleo a un resultado negativo a cannabis en una prueba de detección de sustancias controladas. Ello conllevaba necesariamente que balanceáramos adecuadamente los intereses entre el candidato a empleo y el patrono, en consideración a la política pública imperante en Puerto Rico que reconoce el cannabis medicinal como un tratamiento efectivo para determinadas condiciones médicas debilitantes, tal y como lo es el cáncer.

Sin embargo, al este Tribunal rehusarse a atender este recurso,[1] no se reconoce la clara política pública del Gobierno de Puerto Rico que promueve el uso de cannabis medicinal como un tratamiento legítimo en aras de propiciar un mejor bienestar para los pacientes. Lo que es peor, se valida que un candidato a empleo sea penalizado por tratar su condición con cannabis medicinal, a pesar de que la propia Ley para reglamentar las pruebas para la detección de sustancias controladas en el sector laboral privado, infra, exceptúa de su identificación tal sustancia por esta tener un uso autorizado en ley.

---

[1] Originalmente, este recurso fue atendido por la Sala de Despacho II, la cual está compuesta por los Jueces Asociados Señores Martínez Torres, Kolthoff Caraballo, Feliberti Cintrón y Colón Pérez, quienes proveyeron no ha lugar unánimemente al certiorari presentado por la parte peticionaria. Ahora, la Sala de Despacho I atendió la solicitud de reconsideración que nos ocupa y la Jueza Presidenta Oronoz Rodríguez, la Jueza Asociada Señora Pabón Charneco y el Juez Asociado Señor Rivera García, también proveyeron no ha lugar. Solo este Juez hubiera recomendado al Pleno expedir en reconsideración. En consecuencia, la denegatoria de esta solicitud de reconsideración es el objeto de este disenso.

**Por entender que un patrono no puede colocar a un empleado entre la espada y la pared, obligándolo a escoger entre el trabajo o el tratamiento para su enfermedad, disiento.** Veamos, entonces, los fundamentos jurídicos que orientan mi postura.

I

A.

Como es conocido, en Puerto Rico rige el principio de la libertad de contratación. Ello consiste en que las partes contratantes pueden establecer los pactos, las cláusulas y las condiciones que entiendan convenientes. Lo anterior, claro está, siempre que estos "no sean contrarios a las leyes, a la moral, ni al orden público".[2]

En cuanto al concepto del orden público, este ha sido definido como:

> [E]l conjunto de valores eminentes que guían la existencia y bienestar de una sociedad. **Este recoge y ampara un interés social dominante por su trascendencia, por el número de personas que afecta y por la valía de los derechos que tiende a proteger.** En gran medida el orden público es [un] acopio de normas de moral y de ética pública que en ocasiones alcanzan su exposición en ley, pero que aun sin esa expresa declaración legislativa, **constituyen principios rectores de sabio gobierno nacidos de la civilización y fortalecidos por la cultura, la costumbre, por la manera de ser, en fin[,] por el estilo de una sociedad.**[3]

---

[2] (Negrillas suplidas). 31 LPRA ant. sec. 3372. Véase, además, De Jesús González v. A. C., 148 DPR 255, 264 (1999).

[3] (Negrillas suplidas). De Jesús González v. A.C., supra, págs. 264-265 (citas omitidas).

Resulta evidente que las partes tienen libertad para contratar, a menos que exista "algún principio de derecho constitucional, estatutario **o de política pública** que se lo impida". <u>Mun. de Ponce v. A. C. et al.</u>, 153 DPR 1, 82 (2000).[4] Es por ello que, de determinarse que una cláusula contractual transgrede —por ejemplo— una política pública del Gobierno, los tribunales deben declarar la nulidad de tal cláusula por operar en detrimento del buen orden del sistema jurídico. Íd., pág. 84.

**B.**

En el 2017, se aprobó en Puerto Rico la <u>Ley para manejar el estado, desarrollo e investigación del cannabis para la innovación, normas aplicables y límites</u>, Ley Núm. 42-2017, 24 LPRA sec. 2621 <u>et seq.</u> (Ley Medicinal). Con su aprobación, el Gobierno estableció una **política pública** con el fin de viabilizar el uso de cannabis medicinal como una alternativa de tratamiento legítima para pacientes con ciertas condiciones médicas.[5]

Esta política pública quedó plasmada en el Art. 3 de la Ley Medicinal, <u>supra</u>, el cual dispone que,

> **Es política pública del Gobierno de Puerto Rico proveer un marco regulatorio que permita una alternativa de tratamiento a personas con ciertas**

---

[4]"Ciertamente, **el orden público es parte de la política pública** que permite y contribuye a una mejor convivencia social". (Negrillas suplidas). <u>Unisys v. Ramallo Brothers</u>, 128 DPR 842, 851 (1991).

[5]Exposición de Motivos de la Ley Medicinal (2017 [Parte 2] Leyes de Puerto Rico 1635, 1643); 24 LPRA sec. 2621b.

> **condiciones médicas.** Es importante resaltar el rol de la investigación y el desarrollo, así como la integración de la Academia, organizaciones relacionadas y el sector privado en los estudios científicos.
>
> Puerto Rico no puede cerrar la puerta al desarrollo de estudios científicos de investigación, tratamiento y medicamentos. **La interacción entre la investigación, consideraciones salubristas con controles rigurosos y claros del Estado para viabilizar el estudio, desarrollo y tratamiento con cannabis, son punta de lanza de esta política pública.**[6]

Ciertamente, la consecución de esta política pública está sujeta a que el tratamiento de cannabis sea recomendado para tratar un padecimiento identificado como parte de una relación médico-paciente bona fide. A esos efectos, el Art. 2 de la Ley Medicinal, supra, define tal término como "la relación del paciente con su médico **donde medie la evaluación correspondiente del médico y su historial médico como parte del tratamiento de la condición del paciente que justifique la recomendación de cannabis** y su método de administración".[7]

Desde luego, las condiciones que habilitan una recomendación de cannabis medicinal serán aquellas que "disponga la Junta [Reglamentadora del Cannabis] por reglamento, tomando en consideración las recomendaciones del

---

[6] (Negrillas suplidas). 24 LPRA sec. 2621b.

[7] (Negrillas suplidas). Íd., sec. 2621a(w).

Cuerpo Asesor Médico y conforme a la política pública expresada en la presente Ley".[8]

Al respecto, el <u>Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Limites</u>, Reglamento Núm. 9038 de 2 de julio de 2018 (Reglamento Núm. 9038), contiene una lista de aquellas condiciones que habilitan la utilización de este tratamiento. Específicamente, del Art. 5(20) del Reglamento Núm. 9038, <u>supra</u>, se desprende que, entre otras, el **cáncer** se considera como una de esas condiciones que, para su tratamiento, se permite el uso de cannabis medicinal.[9]

---

[8]Íd., sec. 2623b.

[9]La lista de condiciones son las siguientes:

> a. Alzhéimer; b. Anorexia; c. Artritis; d. Autismo; e. **Cáncer y el tratamiento de quimioterapia para el Cáncer**; f. Depresión; g. Desórdenes de Ansiedad, según definidos en el DSM V (Diagnostic and Statistical Manual of Mental Disorders, por sus siglas en inglés); h. Desórdenes relacionados al Virus de la Inmunodeficiencia Humana (VIH) Positivo; i. Enfermedades degenerativas tales como: la Esclerosis Lateral Amiotrófica (ELA) y la Esclerosis Múltiple; j. Enfermedad Inflamatoria Intestinal; k. Enfermedades incurables y avanzadas que requieran un cuidado paliativo; l. Epilepsia; m. Fibromialgia; n. Glaucoma; o. Hepatitis C; p. Insomnia; q. Lesiones en el Cordón Espinal; r. Migraña; s. Neuropatías Periferales; t. Parkinson; u. Síndrome de Estrés Postraumático (PTSD, por sus siglas en inglés); v. Síndrome de Inmunodeficiencia Adquirida (SIDA);

**C.**

De particular importancia, resulta pertinente destacar que el uso de cannabis medicinal para contrarrestar los síntomas causados por el cáncer o su tratamiento también está avalada por la <u>Ley de política pública del Gobierno de Puerto Rico para el control comprensivo de cáncer en Puerto Rico</u>, Ley Núm. 49-2011, 24 LPRA sec. 417 <u>et seq.</u> (Ley para el control comprensivo del cáncer). De conformidad con su Art. 2, **el propósito de esta ley es "establecer la política pública del Gobierno de Puerto Rico** […] **para dirigir todos los esfuerzos gubernamentales** […] **con el objetivo de** reducir la incidencia, morbilidad y mortalidad mediante la prevención, la detección temprana, **el mejor tratamiento disponible**, la rehabilitación y el cuidado paliativo".[10]

En sintonía con esta política pública, la Ley para el control comprensivo del cáncer exige "**que cada paciente de cáncer reciba el mejor tratamiento disponible;** esto significa que debe ser uno basado en evidencia, cuyo eje sea la pronta recuperación del paciente, sensible a sus

---

w. Trastorno bipolar; x. Cualquier otra condición que cause caquexia, dolor crónico, náuseas severas o espasmos musculares persistentes o que el Cuerpo Asesor Médico recomiende y la Junta así lo exprese mediante Determinación Administrativa.

(Negrillas suplidas). Véase, Art. 5(20) del Reglamento Núm. 9038, <u>supra</u>, págs. 3-4.

[10] (Negrillas suplidas). 24 LPRA sec. 417.

necesidades y donde medie la toma de decisiones bien informada".[11]

Por su parte, en virtud de la <u>Carta de Derechos de los pacientes y sobrevivientes de cáncer</u>, Ley Núm. 275-2012, 24 LPRA sec. 3071 <u>et seq.</u>, el Gobierno, "**como parte de la política pública gubernamental**", estableció "**una serie de derechos dirigidos a asegurar el bienestar y la protección de todo paciente y sobreviviente de cáncer**, sin importar edad, sexo o condición social".[12] En lo que nos concierne, esta Carta de Derechos dispone expresamente que los pacientes y sobrevivientes de cáncer:

> **[T]endrán el derecho a participar en tratamientos complementarios bajo la supervisión del médico oncólogo líder del tratamiento convencional sugerido,** siempre y cuando estos tratamientos sean aprobados por las agencias reguladoras federales y no sean contraindicados para su condición de cáncer, para los tratamientos que esté llevando y para su condición física en ese momento. En aquellos casos donde el médico y/o proveedor de servicios médico-hospitalarios no esté de acuerdo con el tratamiento complementario deseado por el paciente, podrá solicitar un relevo de responsabilidad de parte del paciente.

Cónsono con lo expuesto, el Instituto Nacional del Cáncer —agencia del Gobierno federal encargada de investigar las causas, la prevención, la detección, el diagnóstico, el

---

[11] (Negrillas suplidas). Íd., sec. 421.

[12] (Negrillas suplidas). Exposición de Motivos de la Ley Núm. 275-2012, <u>supra</u>, (2012 [Parte 3] Leyes de Puerto Rico 2439).

tratamiento, la rehabilitación y el control del cáncer—, reconoce el número creciente de estados y territorios de Estados Unidos, incluyendo a Puerto Rico, que han aprobado leyes para legalizar el consumo de cannabis con fines medicinales.[13] Asimismo, valida como beneficiosa la utilización del cannabis para el tratamiento de los efectos secundarios relacionados con el cáncer.[14] Particularmente, el Instituto Nacional del Cáncer destaca que el cannabis medicinal es efectivo para la reducción de las náuseas o vómitos, el estímulo del apetito, el alivio del dolor y la mejora del sueño, todos estos síntomas asociados con el cáncer o su tratamiento.[15]

## II

Por otro lado, la Ley para reglamentar las pruebas para la detección de sustancias controladas en el sector laboral privado, Ley Núm. 59-1997, 29 LPRA sec. 161 et seq. (Ley de Pruebas de Sustancias Controladas), autoriza a los patronos a implantar programas para la detección de sustancias controladas, siempre y cuando cumplan rigurosamente con las disposiciones de esta ley. Véase, Ortiz v. Holsum, 190 DPR 511, 518 (2014).

---

[13] (Negrillas suplidas). Véase, https://www.cancer.gov/espanol/cancer/tratamiento/mca/pro/cannabis-pdq (última visita, 27 de marzo de 2023).

[14] Íd.

[15] Íd.

El propósito de la Ley de Pruebas de Sustancias Controladas es proveer un proceso reglamentario consistente y uniforme para "detectar el uso de sustancias controladas por parte del empleado **y los candidatos a empleo** en el sector laboral privado" con las "salvaguardas necesarias para la protección de la intimidad e integridad personal del individuo afectado".[16] Nótese que el Art. 8 de la ley precitada permite que un patrono pueda exigir a un <u>candidato a empleo</u>[17] que se someta a una prueba de detección de sustancias controladas "[c]omo condición previa al reclutamiento y [como] parte de un examen físico médico general".[18]

Concretamente, el Art. 3(c) define <u>droga</u> o <u>sustancia controlada</u> como:

> [A]quellas incluidas en las Clasificaciones I y II del Artículo 202 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias Controladas de Puerto Rico", o cualquier otra legislación del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de América, **exceptuando el uso de sustancias controladas** por prescripción médica **u otro uso autorizado por ley.**[19]

---

[16] (Negrillas suplidas). 29 LPRA sec. 161.

[17] La Ley de Sustancias Controladas define <u>candidato a empleo</u> como "cualquier persona que solicite empleo a un patrono, verbalmente o por escrito y al cual se ofrezca, aún condicionalmente, un empleo". Íd., sec. 161(b).

[18] Íd., sec 161e(c).

[19] Íd., sec. 161(c).

De lo expuesto, queda claro que la norma general es que se considerarán sustancias controladas aquellas drogas en las Clasificaciones I o II de la ley sustancias controladas local o federal. Como excepción a esta norma, se dispensa de la penalización toda sustancia controlada que se obtenga: (1) por prescripción médica, o (2) en virtud de un uso autorizado por ley.

Expuestos los contornos jurídicos de esta controversia, procedemos a aplicarlos a los hechos ante nuestra consideración.

## III

En el 2019, la señora Sra. Mayra Lissette Pellot Arce (señora Pellot Arce) solicitó empleo en Infosys BPM Limited Corp. (Infosys) como process specialist. Luego de varias entrevistas, el Departamento de Recursos Humanos le cursó una oferta de empleo con la condición de que pasara satisfactoriamente una prueba de dopaje. La señora Pellot Arce aceptó el empleo y, al día siguiente, se realizó las pruebas requeridas.

Tan pronto la señora Pellot Arce se realizó la prueba, le informó al laboratorio y al Departamento de Recursos Humanos de Infosys sobre la probabilidad de un resultado positivo porque ella, como parte de su tratamiento contra el cáncer de mama, utiliza cannabis medicinal.[20]

---

[20]Según surge de los hechos, el tratamiento de la señora Pellot Arce con cannabis medicinal procura **"paliar el profundo dolor que sufría, producido por la operación de sus senos debido al diagnóstico de cáncer de mama"**. (Negrillas

Una vez Infosys recibió el resultado,[21] le solicitó que proveyera evidencia del diagnóstico de cáncer y de la autorización que posee para el uso del cannabis medicinal. Ese mismo día, la señora Pellot Arce les envió la evidencia requerida. A pesar de ello, Infosys le notificó que su oferta de empleo había sido rescindida a causa del resultado positivo a cannabis medicinal.

Por tal razón, la señora Pellot Arce presentó una querella en contra de Infosys sobre despido injustificado y discrimen en el empleo. Planteó que fue discriminada al percibírsele como una persona con impedimento debido a su diagnóstico de cáncer, en violación a, entre otros estatutos, la Ley para prohibir el discrimen contra las personas con impedimentos físicos, mentales o sensoriales, infra. Alegó que Infosys le negó el empleo al catalogarla como una usuaria de drogas ilegales, lo que violentó su derecho constitucional a la dignidad. Además, argumentó que Infosys subvirtió la política pública del Gobierno de Puerto Rico la cual permite el uso de cannabis medicinal para su tratamiento contra el cáncer.

---

suplidas). Solicitud de certiorari, pág. 2. Véase, además, Apéndice de la Solicitud de certiorari, Recomendación médica […], pág. 220 (estableciéndose que se recomendó cannabis medicinal para tratar la enfermedad del cáncer).

[21]Según surge del Drug testing system results report: drugtest, en la explicación para el resultado positivo se expresa lo siguiente: **"Result Explanation: Donor claims medical marijuana card"**. (Negrillas suplidas). Apéndice de la Solicitud de certiorari, pág. 243.

Infosys se opuso mediante sentencia sumaria. Planteó que, previo a realizar la oferta, conocía del diagnóstico de cáncer de la señora Pellot Arce, por lo que negó responsabilidad al amparo de ley antidiscrimen alguna. Asimismo, arguyó que el contrato de empleo nunca cobró eficacia, ya que la señora Pellot Arcet arrojó positivo a cannabis en la prueba de dopaje. Con respecto a esto último, adujo que el incumplimiento con esta condición constituyó un motivo válido y suficiente para retirar la oferta de empleo.

Por su parte, la señora Pellot Arce se opuso a la sentencia sumaria peticionada al exponer que los hechos propuestos por Infosys apoyaban que se dictara sentencia a su favor. En la alternativa, solicitó que se celebrara un juicio para dilucidar los hechos en controversia. Igualmente, reiteró las alegaciones de discrimen y detalló las humillaciones y daños emocionales que ha sufrido por ser una paciente que utiliza cannabis medicinal como tratamiento para el cáncer.

A finales de 2020, el Tribunal de Primera Instancia emitió una sentencia a favor de Infosys. En lo pertinente, determinó como hechos incontrovertidos que Infosys: (1) condicionó la oferta de empleo a que la señora Pellot Arce pasara satisfactoriamente una prueba de detección de sustancias controladas; (2) tiene un código de conducta que prohíbe todo tipo de abuso de drogas o alcohol y una política para un área de trabajo libre de drogas; (3) le indicó a esta que el resultado positivo podría descualificarla, pero

le proveyó la oportunidad de que brindara una explicación, y (4) a pesar de que la señora Pellot Arce envió la evidencia del diagnóstico de cáncer de mama y la recomendación médica para tratar con cannabis su condición, el patrono ejerció su prerrogativa e informó que no estaría formalizando la oferta de empleo.

Al así hacerlo, el foro primario resaltó que la oferta de empleo realizada a la señora Pellot Arce estuvo sujeta a una condición —esto es, la prueba negativa a sustancias controladas—y que esta la incumplió, por lo que nunca se convirtió en empleada. Más allá de determinar que no hubo discrimen o violación constitucional alguna, concluyó que la ley que habilita el uso de cannabis medicinal no provee protecciones en el empleo, así como que la ley que regula las pruebas de dopaje tampoco obliga al patrono a emplear a una persona que obtenga un resultado positivo a esta sustancia.

Tras reiterar sus argumentos ante el Tribunal de Apelaciones, ese foro, en el 2022, confirmó la sentencia recurrida. Similarmente, fundamentó su dictamen en el hecho de que la señora Pellot Arce nunca fue empleada debido al positivo a cannabis que arrojó en la prueba de dopaje. Por otra parte, reprodujo la conclusión del foro primario a los efectos de que, a la luz de un examen de la Ley Medicinal y la Ley de Pruebas de Sustancias Controladas, "la política pública del Estado de permitir el uso de cannabis medicinal no oblig[a] a un patrono a reclutar a una persona usuaria de

cannabis medicinal ni proteg[e] a tal persona de ser discriminada por el uso de cannabis medicinal al momento de su reclutamiento".[22] **Tal conclusión es patentemente errónea. Me explico.**

De entrada, conviene recordar que, si bien en Puerto Rico rige el principio de la libertad de contratación, este no es absoluto. En ese sentido, "[l]a facultad para contratar no puede ejercerse abusivamente ni en oposición a una disposición legal". Perez Rodriguez v. Lopez Rodriguez, 2022 TSPR 13, 209 DPR __ (2022). Es por ello que, independientemente de la cláusula contractual de que se trate y de la importancia que merezca para alguno de los contratantes, si resulta contraria a las leyes o **a una política pública**, tal cláusula es nula y, por lo tanto, inexistente. Morales v. Municipio de Toa Baja, 119 DPR 682, 693 (1987); Mun. de Ponce v. A. C. et al., supra.

Como vimos, resulta indiscutible que, con la aprobación de la Ley Medicinal, "**el Gobierno de Puerto Rico estableció una política pública que tiene como punta de lanza hacer viable que un facultativo médico recomiende la utilización de cannabis medicinal con el objetivo principal de brindar bienestar médico a los pacientes**".[23] La utilización de

---

[22] (Énfasis suplido en el original). Apéndice de la Solicitud de certiorari, Sentencia [del Tribunal de Apelaciones], págs. 30-31.

[23] (Negrillas suplidas). Pueblo v. Hernandez Fuentes, 207 DPR 24, (2021) (Voto particular disidente emitido por el Juez Asociado Señor Estrella Martínez) (citando a J. Negrón Marín, El empleado-paciente de cannabis medicinal en Puerto

cannabis medicinal como política pública del Gobierno encuentra apoyo, además, en el Art. 2 de la Ley para el control comprensivo del cáncer, supra,[24] y en la Carta de Derechos de los pacientes y sobrevivientes del cáncer, supra.[25]

A la luz de tales políticas públicas implementadas por el Gobierno de Puerto Rico, alrededor de 123,486 mil pacientes cuentan con una recomendación médica de cannabis medicinal.[26] De estos, un total de 3,017 pacientes lo utilizan específicamente para paliar los síntomas que causa el cáncer o su tratamiento,[27] siendo algunos de estos el dolor, las náuseas o vómito y la pérdida de apetito o sueño.[28]

No cabe duda de que la acción cometida por Infosys, amparada en una ejecución descontextualizada de la cláusula contractual en controversia, atenta contra la política pública prístina contenida en la Ley Medicinal y en las leyes protectoras de los pacientes de cáncer. Ello, junto con la

---

Rico, 88 Rev. Jur. UPR 920, 953 (2019)). Véase, además, Exposición de Motivos de la Ley Medicinal 2017 [Parte 2] Leyes de Puerto Rico 1635, 1643); 24 LPRA sec. 2621b.

[24]Véase, 24 LPRA sec. 417.

[25]Véase, Exposición de Motivos de la Ley Núm. 275-2012, supra, (2012 [Parte 3] Leyes de Puerto Rico 2439).

[26]Véase, https://www.salud.gov.pr/CMS/DOWNLOAD/7262 (14 de febrero de 2023).

[27]Íd.

[28]Véase, https://www.cancer.gov/espanol/cancer/tratamiento/mca/pro/cannabis-pdq (última visita, 27 de marzo de 2023).

política pública y las normas de hermenéutica de Derecho Laboral que imperan en nuestra jurisdicción,[29] constituye un interés social dominante que se debe proteger en aras de salvaguardar el orden público, por encima del interés superfluo articulado por Infosys.

Resáltese que la aplicación automática de este tipo de cláusula contractual, sin tomar en cuenta el historial de condición médica y su tratamiento, tiene la consecuencia de despojar —**sin más**— a decenas de miles de puertorriqueños y puertorriqueñas de la protección de una política pública dirigida a atender una condición médica con el efecto de privarles de seleccionar un tratamiento en beneficio de su salud y bienestar. Ello, con el agravante de potencialmente vulnerar los derechos constitucionales fundamentales a la dignidad, a la intimidad y a la protección contra ataques abusivos a la honra, la reputación y a la vida privada o familiar. Art. II, Secs. 1 y 8, Const. de PR, LPRA, Tomo 1.[30]

Por tales razones, sostengo que la teoría de los foros recurridos debió ser descartada, pues tiene el efecto de

---

[29] Para una discusión sobre la primacía y el carácter protector de nuestra legislación social, véase, Aponte Valentín et al. v. Pfizer Pharm., 208 DPR 263, 300-303 (2021) (Opinión disidente emitida por el Juez Asociado Señor Estrella Martínez).

[30] En este aspecto, véase, Lozada Tirado et al. v. Testigos Jehova, 177 DPR 893, 910-921 (2010). Refiérase, además, a la Carta de derechos y responsabilidades del paciente, Ley Núm. 194-2000, 24 LPRA sec. 3041 et seq., la cual reconoce el derecho de todo paciente a participar activa y plenamente en las decisiones relacionadas con su salud y cuidado médico. 24 LPRA sec. 3047.

privar a la ciudadanía de la clara política pública contenida en la Ley Medicinal, lo cual, más allá de operar en perjuicio de las garantías constitucionales antes citadas, equivale a propiciar una injusticia y la estigmatización de determinados pacientes médicos que conforman la clase trabajadora en Puerto Rico. **Por tal razón, procedía que este Tribunal interviniera en la ejecución y alcance de la cláusula en cuestión.**[31]

Por otro lado, no existe controversia con respecto a que la Ley de Pruebas de Sustancias Controladas habilita que un patrono imponga como condición para contratar a un empleado que este último se someta a una prueba de detección de sustancias controladas.[32] Ahora bien, la cuestión última de esta controversia recae en determinar si, a la luz de este estatuto, un patrono puede penalizar a un candidato a empleo o empleado por motivo de ser un paciente de una condición médica que, como cuestión de orden y política pública, nuestro ordenamiento le faculta para tratarse con cannabis medicinal.

En ese sentido, recalcamos que las sustancias controladas que pueden ser identificadas mediante las pruebas en cuestión son aquellas en las Clasificaciones I y

---

[31]**Si bien tal intervención dispondría de esta controversia, a continuación expondremos por qué, además, la actuación de Infosys es contraria a la Ley de Pruebas de Sustancias Controladas y, por tanto, ilegal.**

[32]29 LPRA sec. 161e(c).

II de la ley de sustancias controladas estatal o federal.[33] Sin embargo, lo anterior no incluye aquellas sustancias controladas obtenidas por prescripción médica o en virtud de algún uso autorizado por ley.[34]

En reconocimiento de estas dos (2) excepciones, la Ley de Pruebas de Sustancias Controladas habilita que una vez un empleado sea sometido a la prueba, este "tendrá la oportunidad de notificarle a dicho laboratorio cualquier información relevante a la interpretación de dicho resultado, incluyendo su uso de drogas recetadas o no recetadas".[35] "En otras palabras, cuando la Ley salvaguarda el derecho de un empleado a notificar al laboratorio sobre alguna droga recetada o no recetada, no es otra cosa que reconocer que existen sustancias controladas autorizadas por

---

[33]Toda vez que el cannabis medicinal se ubica dentro de estas categorías, resulta apropiado auscultar si se encuentra cobijada por algunas de las excepciones contenidas en el estatuto.

[34]Recordemos que el Art. 3(c) define droga o sustancia controlada como:

> [A]quellas incluidas en las Clasificaciones I y II del Artículo 202 de la Ley Núm. 4 de 23 de junio de 1971, según enmendada, conocida como "Ley de Sustancias Controladas de Puerto Rico", o cualquier otra legislación del Estado Libre Asociado de Puerto Rico o de los Estados Unidos de América, **exceptuando el uso de sustancias controladas** por prescripción médica **u otro uso autorizado por ley.**

29 LPRA sec. 161(c).

[35]Íd., sec. 161b(i).

prescripción médica o con otro uso autorizado por ley, respectivamente, que están eximidas de su detección en las pruebas".[36]

Sobre el particular, conviene destacar que el cannabis medicinal no se obtiene mediante prescripción, sino a través de una recomendación médica.[37] Esto implica que el uso del cannabis medicinal como tratamiento debe analizarse a la luz de la excepción a la definición de sustancia controlada contenida en la ley precitada. Así pues, al escudriñar la convergencia entre el cannabis medicinal y la segunda excepción contenida en el Art. 3(c) de Ley de Pruebas de

---

[36]Negrón Marín, supra, pág. 957.

[37]Véase, 24 LPRA sec 2621(v) y Art. 5(A)(76) del Reglamento Núm. 9038, supra, pág. 10 (estableciéndose que el término paciente se refiere a una persona que recibe una recomendación médica para el tratamiento de una condición debilitante).

Asimismo, refiérase al Art. 5(A)(87) del reglamento antes citado, el cual define recomendación médica como sigue:

> [S]e refiere al documento, expedido física o electrónicamente, y firmado por un doctor en medicina licenciado para practicar dicha profesión […] y autorizado por la Junta […] a recomendar el uso del Cannabis Medicinal a pacientes diagnosticados con condiciones médicas debilitantes establecidas en este Reglamento […] durante el curso de una relación médico-paciente bona-fide.

Íd., págs. 11-12.

Sustancias Controladas, <u>supra</u>, se ha concluido que tal disposición:

> Prove[e] una ventana a que se exima de consideración en las puedas de detección de sustancias controladas en el ámbito laboral privado, a toda aquella sustancia con algún uso autorizado en ley. […] Esto viabiliza que todo empleado que se encuentre utilizando una sustancia controlada con un uso autorizado por la ley estatal, no p[ueda] ser penalizado por su utilización.[38]

**Como expusimos, resulta claro que el cannabis medicinal es una sustancia controlada cuyo uso fue autorizado por la Ley Medicinal con el propósito de que este constituya un tratamiento legítimo para ciertas condiciones, entre ellas el cáncer.** Ello, nos lleva a concluir que "**un empleado que utilice cannabis medicinal en el sector privado no puede ser penalizado, ya que la misma Ley que regula las pruebas de detección de sustancias controladas provee una excepción que hace viable el uso de cannabis medicinal por un empleado**".[39]

Finalmente, nótese que esta conclusión encuentra apoyo, además, en el historial legislativo de la Ley Núm. 90-2022, la cual fue aprobada con el propósito de cobijar bajo las protecciones de la <u>Ley para prohibir el discrimen contra las personas con impedimentos físicos, mentales o sensoriales</u>, Ley Núm. 44 de 2 de julio de 1985, 1 LPRA sec. 501 <u>et seq.</u>, a los pacientes de cannabis medicinal registrados de

---

[38]Negrón Marín, <u>supra</u>, pág. 952.

[39](Negrillas suplidas). Íd., pág. 953.

conformidad a la Ley Medicinal.[40] Inicialmente, el proyecto que culminó con la aprobación de esta ley proponía, a su vez, enmendar la Ley de Pruebas de Sustancias Controladas

_____

[40]En virtud de esta ley, el Artículo 1(f) de la Ley Núm. 44 de 2 julio de 1985 fue enmendado y actualmente dispone lo siguiente:

> Artículo 1.- A los efectos de esta Ley los siguientes términos, tendrán el significado que a continuación se expresa:
>
> […]
>
> (f) Para los efectos de esta Ley no serán consideradas como personas con impedimentos:
>
> […]
>
> (3) Los adictos activos al uso de drogas ilegales, según se definen estas en la Ley de Sustancias Controladas Federal, **con excepción de los pacientes debidamente registrados bajo la [Ley Medicinal]**. De igual modo, quedan excluidos los alcohólicos activos.

(Negrillas suplidas). 1 LPRA sec. 501(f)(3).

Destacamos que la porción que resaltamos expresamente dispone que se podrá considerar una persona con impedimentos aquellas que, a su vez, sean pacientes autorizados a utilizar cannabis medicinal en virtud de la Ley Medicinal. Sin embargo, soy del criterio de que, aun previo a la enmienda aludida, una persona impedida goza de tal protección pues, después de todo, la exclusión que establece tal disposición de ley únicamente aplica a los adictos activos, lo cual no es el caso de un paciente que recibe un tratamiento con cannabis medicinal para su condición debilitante.

A modo persuasivo, véase, <u>Paine v. Ride-Away, Inc.</u>, 174 N.H. 757 (2022) (estableciéndose **<u>unánimemente</u>** por el **<u>Tribunal Supremo de New Hampshire</u>** que el uso de cannabis medicinal, recomendado por un médico de conformidad con la ley, podría, como cuestión de Derecho, ser un acomodo razonable para la discapacidad de un empleado).

con el fin de imponerle responsabilidad al patrono y prohibir cualquier tipo de acción adversa en contra del candidato a empleo o empleado, en aquellos escenarios en que estos últimos presenten la evidencia médica o autorización legal que permite el uso de cannabis medicinal.[41]

Según consta en el Informe Positivo rendido por la Comisión de Derechos Humanos y Asuntos Laborales del Senado de Puerto Rico, el Departamento de Justicia tuvo la oportunidad de analizar el alcance de la propuesta de enmienda antes aludida. Así, mediante un memorial explicativo, el Departamento de Justicia expresó que:

> [T]anto la Ley para Reglamentar las Pruebas de Detección de Sustancias Controladas en el Sector Laboral Privado, como la Ley para Reglamentar las Pruebas de Detección de Sustancias Controladas en los Empleos Públicos definen el concepto "sustancia controlada" o "droga" y exceptúan el uso de sustancias controladas por prescripción médica u otro uso autorizado por ley". **Indican, que actualmente, aunque no lo expresan categóricamente, bajo la ley vigente, ningún patrono puede tomar una acción adversa con un empleado o empleada si este arroja un positivo en la prueba de detección de sustancias controladas.**[42]

Como vemos, esta excepción responde a que, bajo el marco dispuesto en la Ley Medicinal, la detección del cannabis no abona a los propósitos de la Ley de Pruebas de Sustancias

---

[41]Véase, P. del S. 191 de 12 de febrero de 2021, 1ra. Sesión Ordinaria, 19na Asamblea Legislativa, págs. 3-4.

[42](Negrillas y énfasis suplido). Íd., Informe positivo de 17 de junio de 2021, pág. 9.

Controladas. Recuérdese que el propósito de esta última ley "va dirigid[o] a la detección y rehabilitación del empleado usuario de sustancias controladas y a la protección de la ciudadanía contra posibles efectos nocivos como consecuencia de la labor de un empleado bajo los efectos de sustancias controladas".[43] Lo anterior, en consideración a que "[e]l taller de trabajo en el sector privado es un lugar apropiado para ayudar a combatir el mal uso y tráfico ilegal de sustancias controladas" mediante la implementación de los programas de detección de drogas y rehabilitación "que sean necesarios para reintegrar a los empleados afectados por el consumo de drogas".[44]

Precisamente, el error de los foros recurridos radicó en que fallaron en no distinguir la **marcada diferencia entre el uso o abuso de** sustancias ilegales, y su uso **legal como tratamiento médico contra el cáncer**. Entiéndase, la utilización del cannabis medicinal por parte de la señora Pellot Arce respondió a que su doctor, luego de evaluarla, recomendó el uso de este medicamento como parte de un tratamiento que buscaba aliviar los dolores profundos causados por el cáncer de mama y, en consecuencia, mejorar su salud, bienestar y calidad de vida.

---

[43]Exposición de motivos de la Ley de Pruebas de Sustancias Controladas (1997 [Parte 1] Leyes de Puerto Rico 271).

[44]Íd.

En definitiva, reitero que, más allá de consideraciones legales ulteriores,[45] este Tribunal debió declarar que Infosys no podía condicionar la oferta de trabajo en detrimento de una política del Gobierno de primer orden que propende a la utilización del cannabis como un tratamiento en pro del bienestar de los pacientes.[46]

_____

[45] En tal sentido, tómese en consideración el Art. 4 de la Ley de Pruebas de Sustancias Controladas, supra, el cual concede una causa de acción contra el patrono que "rehusó emplear a un candidato a empleo, basado en un resultado erróneo de la prueba y el patrono confió en dicho resultado mediando dolo, culpa o negligencia". 29 LPRA sec. 161a(A)(1).

[46] **De hecho, esta política pública del Gobierno cobra cada día más relevancia**. Nótese que, en virtud de la Ley 15-2021, se añadió un nuevo Art. 24 a la Ley Medicinal, supra, con el propósito de establecer como categoría protegida a los pacientes registrados y así evitar el discrimen. A esos efectos, dispone que:

> **(A)** Salvo por las limitaciones de este Artículo, los y las pacientes registrados(as) y autorizados(as) que así se identifiquen ante un patrono serán considerados(as) como una **categoría protegida** para propósito de las leyes de protección en el empleo **y ningún patrono podrá discriminar** contra una persona que sea un(a) paciente registrado(a) y autorizado(a) para utilizar cannabis medicinal ya sea en el proceso de reclutamiento, contratación, nombramiento, terminación o la imposición de cualquier condición de penalización en el empleo.
>
> […]
>
> **(D)** **Las protecciones de este Artículo deberán ser interpretadas liberalmente en favor del o la paciente registrado(a) y autorizado(a)**.

Nótese que la enmienda en cuestión también toma en consideración las necesidades de tratamiento de los

empleados vis à vis el interés del patrono de salvaguardar la seguridad en el ambiente de trabajo y el derecho a proteger a sus demás empleados, su clientela y su propiedad. En ese sentido, la enmienda aludida establece que:

> **(B)** **Ningún patrono será penalizado** o se le negará algún contrato, licencia, permiso, certificación, beneficios o fondos bajo las leyes del Estado Libre Asociado de Puerto Rico **por la única razón de emplear pacientes registrados(as)** y autorizados(as) a utilizar cannabis medicinal bajo la presente ley.
>
> **(C)** Las protecciones del inciso (A) de este Artículo no cobijarán a un(a) paciente registrado(a) y autorizado(a) de cannabis medicinal cuando el patrono logra establecer, por preponderancia de la prueba, cualquiera de las siguientes condiciones:
>> **1.** La utilización de cannabis medicinal representa una amenaza real de daño o peligro para las personas o propiedad; o
>> **2.** La utilización de cannabis medicinal por el o la paciente registrado(a) y autorizado(a) interfiere con su desempeño y funciones esenciales de trabajo; o
>> **3.** La utilización de cannabis medicinal por el o la paciente registrado(a) y autorizado(a) expone al patrono a la pérdida de alguna licencia, permiso o certificación relacionada con alguna ley, reglamentación, programa o fondo federal; o
>> **4.** El o la paciente registrado(a) y autorizado(a) ingiera o posea cannabis medicinal en su lugar de trabajo y/o durante horas laborales sin autorización por escrito del patrono.

(Negrillas y énfasis suplido). 24 LPRA sec. 2621e-1.

**IV**

No albergamos duda alguna de que uno de los propósitos de la Ley Medicinal es promover el uso del cannabis medicinal como un tratamiento para ciertas condiciones médicas. Bajo ese marco, correspondía que determináramos que esta política pública no puede quedar limitada por motivos exógenos a los postulados del Derecho, de modo que se permita que un patrono sujete a un candidato a empleo o empleado a que este último obtenga un resultado negativo en la detección de un **medicamento** cuyo uso favorece el propio Gobierno.

Toda vez que se ignoraron estos postulados y, con ello, se perpetúa el que un candidato a empleo o empleado-paciente de cannabis medicinal no atienda sus condiciones de salud de conformidad con la recomendación de su médico por miedo a no ser contratado o a sufrir alguna represalia en su trabajo, **<u>disiento</u>**.

Luis F. Estrella Martínez
Juez Asociado